A06A0775, A06A0776. MARINER HEALTHCARE, INC. et al. v. FOSTER; and vice versa.
(634 SE2d 162)

RUFFIN, Chief Judge.

Brian Center Nursing Care/Austell, Inc., a subsidiary of Mariner Healthcare, Inc., (collectively, "Mariner") leased five nursing homes (the "Facilities") from William Foster. After the written leases had expired, Mariner remained in possession of the Facilities, and Mariner and Foster attempted to negotiate a new written lease. No new lease was agreed upon, and Foster eventually leased the Facilities to another company. Mariner did not vacate the Facilities, and Foster filed a declaratory judgment action seeking a determination of the rights of the parties. Mariner counterclaimed, seeking a declaratory judgment that it had a contractual right of first refusal to re-lease the

Facilities and arguing that Foster breached an oral contract and is bound by promissory estoppel.

The parties filed cross-motions for summary judgment. On the issue of the existence of a right of first refusal, the trial court granted Foster's motion for summary judgment and denied Mariner's motion for partial summary judgment. The trial court denied Foster's motion for summary judgment on Mariner's claim for promissory estoppel. The trial court also denied Mariner's motions to transfer venue and for judgment on the pleadings. We granted Mariner's motion for interlocutory appeal in Case No. A06A0775, and Foster cross-appeals in Case No. A06A0776. For reasons that follow, we affirm in Case No. A06A0775 and reverse in Case No. A06A0776.

We conduct a de novo review of both the law and the evidence on appeal from the grant or denial of a motion for summary judgment.[1] We view the evidence in a light most favorable to the nonmovant in order "to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law."[2]

Mariner and Foster entered into two leases, one for the Facilities located in Thomasville, Jeffersonville, Lumber City, and LaGrange, and one for the Facility in Powder Springs. The leases gave Mariner a right of first refusal as to any re-lease of the Facilities under the following conditions:

> Lessor covenants during the Lease Term not to sell . . . or agree to re-lease effective upon the termination of this Lease, any one or more of the Facilities without first giving Lessee at least thirty (30) days written notice (the "Offer Notice") specifying the terms of said sale . . . or lease, . . . which Offer Notice shall be deemed to constitute an offer by Lessor to sell . . . or lease such Facility or Facilities to Lessee on the same terms and conditions . . . as set forth in the offer notice.

The two leases ended on March 31, 2003. While Mariner and Foster negotiated for either an extension of the leases or new leases, Mariner remained in possession of the Facilities and continued to pay rent. The parties discussed "a partial renewal of the Leases for a period of six (6) months commencing on April 1, 2003 and ending on September 30, 2003." Although Foster disputes that he agreed to these terms, viewing the negotiations in the light most favorable to

---

[1] See *Guideone Life Ins. Co. v. Ward*, 275 Ga. App. 1, 2 (619 SE2d 723) (2005).

[2] Id.

Mariner, they resulted in a six-month extension of the leases. Mariner did not vacate the Facilities after the six-month extension had expired, and negotiations for a new lease continued unsuccessfully into the fall of 2003.

On December 15, 2003, Foster entered into a written lease for the Facilities with Triad Health Management of Georgia, LLC. He did not provide Mariner with a right of first refusal. The next day, December 16, 2003, Foster notified Mariner that the Facilities had been leased to Triad effective January 1, 2004, and asked for "an orderly transition of the [Facilities] to [Triad's] control." Mariner did not vacate the Facilities, and this litigation ensued.

The trial court found that Mariner was a tenant at will in December 2003 and, as such, would only be entitled to a right of first refusal if that right were a general term or condition of the original leases that continued to govern the at will relationship. It concluded that the right of first refusal was not a general term or condition of the leases and could not be enforced by Mariner once it was a tenant at will. Accordingly, the trial court denied Mariner's motion for partial summary judgment and granted Foster's motion for summary judgment as to the right of first refusal issue. It also denied Mariner's motion for judgment on the pleadings and motion to transfer venue. The trial court denied Foster's motion for summary judgment on Mariner's promissory estoppel claim because it found that, while no enforceable contract right existed, there was "some evidence of a promise made and reliance upon that promise to [Mariner's] detriment."

1. Preliminarily, we note that in both cases Mariner's counsel has repeatedly failed to provide adequate citation to the record, frequently referring to spans of 100 to 200 pages as the source for specific quotes upon which it relies. References to the record in briefs should contain specific page numbers.[3] We caution Mariner's counsel that our rules "are designed to facilitate the consideration of enumerated errors, and . . . compliance with such rules is not optional."[4] Future violations of the Court's rules may result in sanctions.[5]

*Case No. A06A0775*

2. Mariner challenges the trial court's holding that it could not enforce a right of first refusal. Mariner contends that when the leases were extended beginning in April 2003, Foster agreed that the terms

---

[3] See Court of Appeals Rule 25 (c) (3) (i).

[4] *In the Interest of D. D.*, 273 Ga. App. 839 (1) (616 SE2d 179) (2005).

[5] See *Smith v. State*, 278 Ga. App. 315 (1) (628 SE2d 722) (2006).

and conditions of the leases would continue in force so long as the parties continued to negotiate. Mariner bases its argument on (1) comments made by Foster's representative relating to the March 2003 negotiations to the effect that negotiations would continue as long as Mariner continued to pay rent, and (2) on a letter relating to the lease extension stating that "[a]ll other terms and conditions of the above-referenced Leases shall continue in full force and affect [sic]." But none of this evidence, even when viewed in a light most favorable to Mariner, contains a specific time frame. And, assuming there was an extension of the leases, it terminated on September 30, 2003. Any lease beyond that time was, at best, an oral agreement for an indefinite period of time, hence unenforceable.[6] Under Georgia law, "[w]here no time is specified for the termination of a tenancy, the law construes it to be a tenancy at will."[7] The trial court properly concluded that in December 2003, no written lease agreement for a specific time period governed the relationship between Mariner and Foster, and that Mariner was a tenant at will.[8]

" 'One who is a tenant at will by virtue of his holding over after the expiration of the term of his lease holds the premises subject to the general terms and conditions specified in the lease, except so far as modified by mutual agreement.' "[9] Thus, as a tenant at will in December 2003, Mariner could enforce the right of first refusal in the original leases only if it was a general term or condition of the leases. Whether a right of first refusal is a general term or condition of a lease appears to be an issue of first impression in Georgia.

We conclude that the general terms and conditions of a lease are those indispensable to a continuing landlord/tenant relationship; "at a minimum, provisions for rent and repairs."[10] We agree with the trial court that the right of first refusal was not a general term or condition of the leases because it is not a term or condition that is necessary in order for the landlord/tenant relationship to continue. Moreover, the leases here specifically included a time limit on the availability of the right of first refusal, which was "during the lease term." The construction of a lease, which is a contract, is generally a question of law for the court.[11] If the language of a contract is clear and unambiguous,

---

[6] See *Lemming v. Morgan*, 228 Ga. App. 763, 764-765 (1) (492 SE2d 742) (1997); *Farmer v. Argenta*, 174 Ga. App. 682, 683 (331 SE2d 60) (1985) (physical precedent only).

[7] OCGA § 44-7-6.

[8] See *Valiant Steel & Equip. v. Roadway Express*, 205 Ga. App. 237, 240 (2) (421 SE2d 773) (1992); *Plank v. Bourdon*, 173 Ga. App. 391, 394 (2) (326 SE2d 571) (1985).

[9] *Colonial Self Storage &c. v. Concord Properties*, 147 Ga. App. 493, 494 (1) (249 SE2d 310) (1978).

[10] *Gully v. Glover*, 190 Ga. App. 238, 240 (2) (378 SE2d 411) (1989).

[11] See *Shore v. Loomis*, 187 Ga. App. 674, 675 (1) (371 SE2d 96) (1988).

we enforce those terms and need not look elsewhere to assist in the contract's interpretation.[12] Here, the clear and unambiguous language of the contract provides that the right of first refusal only existed during the lease term.[13] The trial court did not err in holding as a matter of law that Mariner, a tenant at will, could not enforce the right of first refusal contained in the expired leases.

3. Mariner argues that the trial court erred in denying its motion for judgment on the pleadings because Foster failed to state a claim for declaratory judgment or show that he is entitled to the remedy of dispossession. We conduct a de novo review of a trial court's ruling on a motion for judgment on the pleadings.[14] Because a motion for judgment on the pleadings should be granted only when there is a complete failure to state a claim, we treat all well-pled material allegations by the nonmovant as true and all denials by the movant as false.[15]

(a) Georgia's declaratory judgment act is to be construed liberally, and all that is required to state a claim for declaratory judgment is "the presence in the declaratory action of a party with an interest in the controversy adverse to that of the petitioner."[16] We have previously held that "a determination of the rights of the parties to a lease agreement is a proper subject for relief under the [declaratory judgment] act."[17] Accordingly, we are unpersuaded by Mariner's argument that Foster cannot seek a declaratory judgment because he has already executed a lease with Triad and filed dispossessory actions against Mariner and thus does not seek the trial court's guidance as to future acts. The dispossessory actions against Mariner have been stayed pending the outcome of this action, and Mariner remains in possession of the Facilities. The outcome here clearly will govern Foster's future actions toward Mariner. Because Foster's complaint is sufficient to state a claim for declaratory judgment, the trial court properly denied Mariner's motion for judgment on the pleadings on this basis.[18]

(b) Mariner also contends that the trial court should have dismissed Foster's case because he has not complied with Georgia's

---

[12] See *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818, 820 (596 SE2d 197) (2004).

[13] See *Booker v. Hall*, 248 Ga. App. 639, 642 (1) (b) (548 SE2d 391) (2001) (right of first refusal limited to two years by terms of contract); see, e.g., *Burns v. Reves*, 217 Ga. App. 316, 317-318 (1) (457 SE2d 178) (1995) (purchase option in lease expired at end of lease and could not later be exercised by hold-over tenants).

[14] See *Bogard v. Inter-State Assurance Co.*, 263 Ga. App. 767 (589 SE2d 317) (2003).

[15] See *Ware v. Fidelity Acceptance Corp.*, 225 Ga. App. 41, 44 (3) (482 SE2d 536) (1997).

[16] (Punctuation omitted.) *RTS Landfill v. Appalachian Waste Systems*, 267 Ga. App. 56, 63 (3) (598 SE2d 798) (2004).

[17] *Cook Farms, Inc. v. Bostwick*, 165 Ga. App. 692, 693 (1) (302 SE2d 574) (1983).

[18] See *RTS Landfill*, supra.

statutory procedures for dispossessing a tenant at will, and thus is not entitled to the remedy of dispossession that he seeks. Specifically, Mariner argues that Foster did not give 60 days' notice to vacate the premises and, when the 60 days had expired, did not make a demand for possession.[19] But, taking the allegations in Foster's complaint as true, he notified Mariner on December 16, 2003 that he was terminating its tenancy at will, and "the statutorily required sixty (60) day notice for termination of a tenancy at will ended on February 14, 2004." This gave Mariner "fair notice of the claim and a general indication of the type of litigation involved."[20] We therefore agree with the trial court that Foster's allegations are sufficient to state a claim upon which relief might be granted, and we affirm its denial of Mariner's motion for judgment on the pleadings.[21]

4. Mariner also challenges the trial court's denial of its motion to transfer venue. This action was brought in Twiggs County; Mariner argues that as a corporation with its only registered office in DeKalb County, it must be sued in DeKalb County. We will affirm a trial court's ruling on a motion to transfer venue if it is supported by any evidence.[22]

Where there are multiple defendants, venue is proper in any county where one of the defendants may be sued.[23] The trial court held that venue was proper in Twiggs County as to Brian Center Nursing Care/Austell, Inc. under OCGA § 14-2-510 (b) (2). Pursuant to that Code section, venue is proper "[i]n actions based on contracts, in that county in this state where the contract to be enforced was made or is to be performed, if the corporation has an office and transacts business in that county."[24] Although awkwardly phrased, the trial court's order concludes that because one of the Facilities at issue is located in Twiggs County and Brian Center has an office and transacts business there, venue was proper as to Brian Center and, consequently, as to its co-defendant, Mariner. Because there is some evidence to support the trial court's finding that venue was proper in Twiggs County, we affirm.[25]

---

[19] See OCGA §§ 44-7-7 (landlord must provide tenant with 60 days' notice to terminate tenancy at will); 44-7-50 (at the end of the 60 days, landlord may make additional demand for possession).

[20] *Lathem v. Hestley*, 270 Ga. 849, 850 (514 SE2d 440) (1999); see also *Alexander v. Steining*, 197 Ga. App. 328, 332 (398 SE2d 390) (1990).

[21] See *Smith v. Local Union No. 1863 &c.*, 260 Ga. App. 683, 685-686 (2) (580 SE2d 566) (2003).

[22] See *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004).

[23] See Ga. Const. 1983, Art. VI, Sec. II, Par. IV; OCGA § 9-10-31.

[24] OCGA § 14-2-510 (b) (2).

[25] See *McLendon v. Albany Warehouse Co.*, 203 Ga. App. 865, 867-869 (2) (418 SE2d 130) (1992); *Chrysler Credit Corp. v. Brown*, 198 Ga. App. 653, 655 (2) (402 SE2d 753) (1991).

## Case No. A06A0776

5. In his cross-appeal, Foster asserts that the trial court erred in denying his motion for summary judgment on Mariner's promissory estoppel claim.[26] A defendant is entitled to summary judgment "if it is able to pierce the plaintiff's pleadings as to any material element and the plaintiff is unable to respond with any evidence to create a jury issue as to that element."[27] The elements of promissory estoppel are:

(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.[28]

Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration.[29]

Here, the promise upon which Mariner alleges it relied was "that the terms and conditions of the Lease would continue as long as [Mariner] paid rent and continued to negotiate." Mariner contends that it was harmed as a result of relying on this promise because it "continued to occupy the facilities; . . . increased its rent payments[;] . . . made each rent payment to Foster; and . . . undertook negotiations with Foster for a new lease." But the alleged promise, even when viewed in the light most favorable to Mariner, was for an indefinite period of time. It was also vague, as the parties did not attempt to define what would constitute continuing to negotiate.[30] As

---

[26] Mariner contends that certain of Foster's arguments on cross-appeal were not raised in the trial court and thus cannot be considered on appeal. However, our review of the voluminous record, including Foster's memoranda in support of his motion for summary judgment and the hearing transcript, indicates that these issues were before the trial court and we may address them. See *Ga. Farm &c. Ins. Co. v. Shook*, 215 Ga. App. 66, 67-68 (449 SE2d 658) (1994).

[27] *Garrett v. NationsBank*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997).

[28] *McReynolds v. Prudential Ins. Co. &c.*, 276 Ga. App. 747, 749 (1) (624 SE2d 218) (2005).

[29] See *Voyles v. Sasser*, 221 Ga. App. 305, 306 (2) (472 SE2d 80) (1996) (promissory estoppel does not apply to a promise to continue to do business with company indefinitely); *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985) (no promissory estoppel where promise was made to continue business relationship for an indefinite period of time).

[30] See *Reuben v. First Nat. Bank of Atlanta*, 146 Ga. App. 864, 867 (247 SE2d 504) (1978) (promise to make loan unenforceable under theory of promissory estoppel where promise did not establish specific terms of the loan).

such, it cannot be the basis for a promissory estoppel claim, and the trial court erred in denying Foster's motion for summary judgment on this ground.[31]

*Judgment affirmed in Case No. A06A0775 and reversed in Case No. A06A0776. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 11, 2006 — 

*Powell & Goldstein, Jennifer B. Dempsey, Christopher P. Galanek,* for appellants.
*Kight & Baggett, Joshua E. Kight,* for appellee.