In the Supreme Court of Georgia

Decided:    September 12, 2016

S16G0664.  SUNTRUST BANK v. VENABLE.

THOMPSON, Chief Justice.

We issued a writ of certiorari in this appeal which arises out of a deficiency action brought by appellant SunTrust Bank ("SunTrust") as the assignee under a motor vehicle conditional sales contract following its repossession and sale of a motor vehicle purchased by appellee Mattie Venable. The issue to be decided is whether the four year statute of limitation set forth in OCGA § 11-2-725 (1) applicable to actions on contracts for the sale of goods or the six year statute of limitation generally applicable to actions on simple written contracts applies to the deficiency action filed by SunTrust.  See OCGA § 9-3-24.  We conclude that the action is subject to the four year statute of limitation found in § 11-2-725 (1).

This appeal comes before us from the Court of Appeals' reversal of the grant of summary judgment in favor of SunTrust on its deficiency claim.  See

<u>Venable v. SunTrust Bank</u>, 335 Ga. App. 344 (780 SE2d 793) (2015). "On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) <u>Giles v. Swimmer</u>, 290 Ga. 650 (1) (725 SE2d 220) (2012). See OCGA § 9-11-56 (c).

Viewed in that light, the evidence on summary judgment showed that in March 2006, Venable entered into a "Simple Interest Conditional Sale Contract with Options for Balloon Payment and Vehicle Return" (the "Contract"), when she purchased a minivan from Team Ford of Marietta (the "dealership"). The Contract identified the dealership as the "Seller" and Venable as the "Purchaser" and granted the dealership a security interest in the purchased vehicle, which interest it assigned to SunTrust shortly after the Contract was executed. After Venable stopped making payments in November 2007, SunTrust repossessed the minivan, sold it at auction for an amount less than the amount owed under the Contract, and filed suit against Venable on October 15, 2012 to recover the deficiency amount. Venable answered, and in defense, she asserted that the

2

deficiency action was barred by the four year statute of limitation applicable to contracts for the sale of goods.  See OCGA § 11-2-725 (1).  Without expressly addressing the question of the applicable statute of limitation, the trial court granted SunTrust's motion for summary judgment.  The Court of Appeals reversed, concluding that SunTrust's deficiency action was barred by § 11-2-725 (1)'s four year period of limitation, and therefore, SunTrust was not entitled to summary judgment on its deficiency claim.  We granted SunTrust's petition for writ of certiorari, and for the reasons set forth below, we affirm the decision of the Court of Appeals.

OCGA § 9-3-24 sets out a general six year period of limitation applicable in actions on a simple written contract.  It provides, in pertinent part, that

> [a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable.  However, this Code section shall not apply to actions for the breach of contracts for the sale of goods under Article 2 of Title 11.

OCGA § 9-3-24.  Article 2 of Title 11, Georgia's enactment of the Uniform Commercial Code, applies to actions for the breach of a contract involving the sale of goods and requires such actions to "be commenced within four years

3

after the cause of action has accrued."[1]  OCGA § 11-2-725 (1).  Resolution of this appeal, therefore, turns on the determination of whether the Contract between Venable and the dealership constitutes a contract for the sale of a good.

The Court of Appeals, applying well-established Georgia law, concluded that Article 2's four year statute of limitation applied because the primary purpose of the conditional sales contract executed by Venable was the sale of a good.  See Venable, 335 Ga. App. at 347.  This Court has not previously considered the issue of which statute of limitation applies to a deficiency action arising from a contract for the sale of a motor vehicle that also granted a security interest.  It is well established, however, that the provisions of Article 2 are applicable both to a contract that involves *only* the sale of goods and a contract that contains a blend of sale and non-sale elements "if the dominant purpose behind the contract reflects a sales transaction." (Citation and punctuation omitted.) Ole Mexican Foods, Inc. v. Hanson Staple Co., 285 Ga. 288, 290 (676 SE2d 169) (2009).  To make the determination of the "dominant purpose," a

---

[1] Expressly exempted from this provision is any transaction "intended to operate *only* as a security transaction[.]" (Emphasis added.) OCGA § 11-2-102.  SunTrust correctly does not contend that the contract in this case, involving both the sale of a motor vehicle and the grant of a security interest, comes within this exemption.

court "must look to the primary or overall purpose of the transaction." (Citation and punctuation omitted.) Id. at 290.

> "When presented with two elements of a contract, each absolutely necessary if the subject matter is to be of any significant value to the purchaser, it is a futile task to attempt to determine which component is 'more necessary.' Thus, [we must look] to the predominant purpose, the thrust of the contract as it would exist in the minds of reasonable parties. There is no surer way to provide for predictable results in the face of a highly artificial classification system." [Cit.]

J. Lee Gregory v. Scandinavian House, L.P., 209 Ga. App. 285, 288 (1) (433 SE2d 687 (1993).

Applying these principles in this case, we conclude that the primary purpose of the contract between Venable and the dealership was the sale of a good. It is undisputed that the minivan constituted a "good,"[2] that the Contract, which was labeled "Conditional Sale Contract," identified the dealership and Venable as "Seller" and "Purchaser," and that the Contract provided for the sale of the minivan in exchange for Venable's agreement to pay a sum certain. Although the Contract also granted the dealership a security interest in the vehicle sold, it, by its plain language, constituted both a sales transaction and a

---

[2] See OCGA § 11-2-105 (1) (defining "goods").

5

secured transaction, creating a dual relationship between Venable and the dealership as both buyer and seller and obligor and secured party. Its predominant purpose of selling a good, however, is evidenced by its title, the designation of the parties as buyer and seller, Venable's testimony that her primary reason for executing the Contract was to purchase the minivan, and the fact that the sales price of the vehicle was $29,626.00, whereas no separate fee was required for the granting of the security interest to be held by the dealership. See Ole Mexican Foods, Inc., 285 Ga. at 291 (stating that although "the label the contracting parties affix to an agreement is not necessarily determinative of the agreement's predominant purpose," it "'is a good barometer of the parties' intentions'" and "can constitute potent evidence of that purpose."); Paramount Contracting Co. v. DPS Industries, Inc., 309 Ga. App. 113, 116 (709 SE2d 288) (2011) (finding sale of good was the predominant purpose of a contract providing for both the sale and delivery of dirt, in part because the contract did not provide separate pricing for the delivery of the dirt and the delivery cost accounted for, at best, only 20 percent of the value of the dirt); Southern Tank & Equipment Co. v. Zartic, Inc., 221 Ga. App. 503, 505 (471 SE2d 587) (1996) (holding the predominant purpose of a contract containing both sale and non-

sale aspects was the sale of goods in part because the portion of the cost attributable to non-sale elements was less than one half of the total contract price); J. Lee Gregory, 209 Ga. App. at 288 (1) (predominant purpose of contract for sale and installation of windows was sale of a good where two-thirds of the cost of the transaction was allocated to the sale of the windows and contract failed to segregate the price of the windows from the price for services to be rendered).

Our determination that the predominant purpose of the Contract was the sale of a good is also supported by our consideration of the nature of the action filed by SunTrust. SunTrust's deficiency action reflects its decision to seek payment of the full purchase price, an element we find more closely related to the sales aspect of the Contract. As described by the New Jersey Supreme Court in Associates Discount Corp. v. Palmer, 219 A2d 858, 861 (N.J. 1966), a deficiency suit

> is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights [as the holder of a security interest] by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement.

7

We agree with this characterization of a deficiency action and with those courts, like Palmer, which have described deficiency actions as "an attempt to enforce an obligation arising out of the sales contract component of a retail installment contract after the remedies created by the security agreement component of that contract have been exhausted." D.A.N. Joint Venture, III v. Clark, 218 SW3d 455, 459 (Ct. App. Missouri 2006). See also DaimlerChrylser Services North America, LLC v. Quimette, 830 A2d 38, 41-42 (Vt. 2003), and cases cited therein. See generally 68A AmJur 2d Secured Transactions § 565 (2016) ("An action to recover a deficiency judgment is not governed by Article 9 [relating to secured transactions] because it is merely an ordinary action seeking to enforce the underlying obligation. Thus, the action of the creditor to recover a deficiency judgment from a credit buyer of goods is in substance an action to recover the balance of the purchase price and is therefore subject to the statute of limitations applicable to such actions.").

Contrary to SunTrust's argument in this case, the fact that the Contract also granted a secured interest in the vehicle sold does not, by itself, transform the predominant purpose of the Contract and does not take it outside the

coverage of Article 2.[3]  We find no authority for the proposition that the mere presence of a secured transaction aspect within a contract automatically triggers application of OCGA § 9-3-24's six year limitation period for general contract claims.  In addition, while the grant of a security interest may have been a necessary component of the overall transaction between Venable and the dealership, it clearly was not the predominant purpose of the Contract, there being no reason for the dealership to retain a security interest in the absence of a sale.  See Iler Group, Inc. v. Discrete Wireless, Inc., 90 FSupp3d 1329, 1336 (1) (ND Ga. 2015) (concluding that the predominant purpose of a contract involving the sale of both goods and services was the sale of goods because the services to be provided were related to and dependent upon the sale of the goods).

Our review of case law from other jurisdictions demonstrates that a

---

[3]  We specifically reject SunTrust's invitation to hold that OCGA § 10-1-31 (a) (9)'s definition of a "retail installment contract" as that term is used in the Motor Vehicle Sales Finance Act ("MVSFA"), OCGA § 10-1-30 et seq., controls our determination of the Contract's "predominant purpose."  The MVSFA is limited in its scope to the regulation of motor vehicle financing agencies and the formation of motor vehicle retail installment contracts.  There is no evidence that the legislature intended, when defining the category of contracts to which the MVSFA's requirements would apply, to define the term "contract" as it may be used throughout the Georgia Code or to establish by implication the limitation period applicable to all contracts for the sale of a motor vehicle.

9

majority of courts have rejected this same argument when considering their state's enactment of the Uniform Commercial Code (UCC) and similar contracts.[4] For example, the court in <u>First of America Bank v. Thompson</u>, 552 NW2d 516, 520-522 (Mich. App. 1996), concluded, under facts virtually identical to those here, that the four year limitation period set out in Article 2 of the UCC applied to a deficiency action arising out of a contract for the sale of a motor vehicle that also granted a secured interest. In reaching this conclusion, the court found persuasive the numerous cases holding that the UCC's four year statute of limitation applies to an action brought by a creditor following the sale of a good purchased subject to a security agreement because these suits are primarily related to the sales aspect of the transaction. See, e.g., <u>First Hawaiian Bank v. Powers</u>, 998 P2d 55, 67 n.8 (Haw. App. 2000) (applying Article 2's four year limitation period to bank's action to recover a deficiency judgment arising out of an automobile sales contract that also granted a security interest); <u>Citizen's Nat'l Bank of Decatur v. Farmer</u>, 395 NE2d 1121, 1123 (Ill. App. 1979) (deficiency action brought by assignee under retail installment contract

---

[4] Our decision in this case thus promotes one of the underlying purposes of the Uniform Commercial Code and Title 11 of the Georgia Code, to "make uniform the law among the various jurisdictions." See OCGA § 11-1-103 (a) (3).

10

for sale of motor vehicle following repossession); Massey-Ferguson Credit Corp. v. Casaulong, 62 Cal. App. 3d 1024, 1027 (Cal. App. 1976) (deficiency action arising from sale of farm equipment); Palmer, 219 A2d at 860-861.

Because the predominant purpose of the Contract was the sale of a good, we agree with the Court of Appeals that it is governed by § 11-2-725 (1)'s four year statute of limitation. It is undisputed that SunTrust's deficiency claim seeking a deficiency judgment was filed more than four years after the cause of action accrued. See Radha Krishna, Inc. v. Desai, 301 Ga. App. 638, 641 (2) (689 SE2d 78) (2009) (holding that limitation period begins to run at the time of the breach). Accordingly, SunTrust's claim is barred under the applicable statute of limitation, and we find no error in the Court of Appeals' decision reversing the trial court's grant of summary judgment in SunTrust's favor.

Judgment affirmed. All the Justices concur.